UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SUSAN ZOLTAN, MD, | ECF Case |
| Plaintiffs, | Case No.: |
| -against- | **COMPLAINT** |
| ELEVANCE HEALTH, INC., DANIEL G. KASSAN, MD and CAROLYN LANGER, MD | |
| Defendants. | |

---

Plaintiff, Susan Zoltan, by her attorneys, Book Law LLP, for her Complaint against defendants, Elevance Health, Inc., formerly Anthem, Inc., Daniel G. Kassan, MD, and Carolyn Langer, MD, (collectively "defendants"), respectfully alleges as follows:

## NATURE OF ACTION

1. This is an action for damages against defendants for gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law Article 15 §290 *et seq.* (hereafter "NYSHRL"), and the New York City Human Rights Laws §8-101 *et seq.* (hereafter "NYCHRL").

## JURISDICTION AND VENUE

2. The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over related claims brought under the New York Executive Law, New York City Human Rights Laws, and under New York State common law.

3. Venue in this Court is proper in that defendants maintain principal offices in this District.

## ADMINISTRATIVE PROCEEDINGS

4. On or about May 13, 2022, plaintiff filed a timely Charge alleging discrimination on the basis of gender and retaliation under Title VII with the Equal Employment Opportunity Commission ("EEOC"), bearing Charge No. 520-2022-05712.

5. The EEOC issued a Right to Sue Letter dated November 23, 2022, more than 180 days after the filing of the EEOC Charge, and within 90 days of filing the Complaint in this Court. A copy of the Right-to-Sue Letter is annexed as Exhibit A.

## PARTIES

6. Plaintiff, Susan Zoltan ("plaintiff" or "Dr. Zoltan"), is female and resides in Kings County and the State of New York. At all relevant times, she met the statutory definition of an "employee" under all applicable statutes.

7. Defendant Elevance Health, Inc., formerly Anthem, Inc. ("Anthem" or "Defendant"), is a foreign limited liability company with its principal place of business located at 220 Virginia Ave., Indianapolis, Indiana, 46204, United States.

8. Anthem operates office locations in multiple states around the country, including offices located at 10 Warren Street, New York, New York 10007.

9. Plaintiff's paystubs list Anthem and its principal place of business address as her employer.

10. Upon information and belief, Anthem employs more than 15 employees in the health insurance and benefits business, and, at all relevant times, Anthem met the definition of an "employer" under all applicable statutes.

11. Defendant, Daniel G. Kassan ("Dr. Kassan"), upon information and belief, is male, is a resident of the State of New York, and is employed by Anthem as Director of Medical Operations, with an office at 10 Warren Street, New York, NY 10007.

12. Defendant, Carolyn Langer ("Dr. Langer"), upon information and belief, is female, is a resident of the State of New York, and is employed by Anthem as Regional Vice President and Senior Clinical Officer, Clinical Solutions, with an office at 10 Warren Street, New York, NY 10007.

**FACTS**

13. In or about June 2015 Anthem hired Dr. Zoltan as a consultant.

14. When Dr. Zoltan was initially hired, she reported to Dr. Althea Burrows, a woman of color, who was subsequently demoted.

15. Dr. Zoltan advised Dr. Burrows, as well as other Anthem management team members, that she also had a private clinical practice, so she needed to work flexible part-time hours around her private practice.

16. On or about December 9, 2019, Anthem promoted Dr. Zoltan to the position of Medical Director, reporting to Dr. Kassan and gave her a raise, sign on bonus, participation in the annual incentive plan, and stock options in recognition of her excellent performance.

17. Dr. Kassan agreed that Dr. Zoltan could work a flexible schedule around her private practice at the time she was promoted.

18. Dr. Zoltan assumed the duties of her new role on or about January 6, 2020.

19. On or about January 6, 2020, Anthem commenced paying Dr. Zoltan a higher salary for the Medical Director role.

20. Anthem did not advise Dr. Zoltan of any minimum hourly commitment for the Medical Director position.

21. At no time during her employment did Dr. Zoltan agree to work a 40-hour per week schedule.

22. At all times, during Dr. Zoltan's employment with Anthem, her managers were aware that she was also employed in private practice, while performing her position as Medical Director.

23. Anthem vetted Dr. Zoltan's clinical employer through Anthem's Ethics and Conflict division to ensure that her employment did not present any conflicts.

24. Upon information and belief, other physicians similarly situated to Dr. Zoltan who did not complain of a hostile work environment or gender discrimination worked fewer than 40 hours per week for Anthem but were not disciplined or terminated as a result of their hours.

25. Upon information and belief, Anthem installed the Workforce application on Dr. Zoltan's computer in or before January 2020.

26. The Workforce application captured and tracked all work performed, including productivity and times employees logged in or out of the system to perform Anthem's business, displaying when Dr. Zoltan was active or inactive. It was viewable by and accessible to Dr. Zoltan's supervisors at all times.

27. Dr. Zoltan at all relevant times received excellent performance reviews.

28. Dr. Zoltan was awarded a raise in salary in 2021 in recognition of her excellent performance.

29. Dr. Zoltan was awarded a bonus and stock options in 2021 in recognition of her excellent performance

30. Dr. Zoltan worked remotely from her home during her employment with Anthem.

31. Dr. Zoltan's duties included assisting with the New York queue of insurance claims and handling appeals in ophthalmology and facial plastics.

32. Dr. Zoltan received additional raises and increased awards of stock options and incentive plan funds in 2021 in recognition of her excellent performance.

33. Dr. Zoltan regularly worked on her days off from private practice and on weekends until her queue was clear, helped team-mates clear other queues, and served as a resource to her team and others in her area of specialization, ophthalmology.

34. At the end of 2021, Dr. Kassan began a pattern of harassing female employees based on their gender.

35. For example, he yelled at Dr. Zoltan and called her "stupid." Dr. Zoltan later learned that he had recently treated a female associate similarly.

36. Late in 2021, Dr. Kassan threatened to review Dr. Zoltan poorly on her year-end evaluation and threatened not to pay her bonus, despite her continued strong performance.

37. Dr. Kassan's treatment of Dr. Zoltan appeared motivated by gender discrimination, as he treated male employees more respectfully than female employees.

38. Upon information and belief, two other female physicians in the New York Group filed complaints with Human Resources in 2021 and 2022 about Dr. Kassan's gender discrimination and disrespectful treatment of them.

39. Upon information and belief, at least three female physicians left the New York Group in 2021 and 2022 due to the sexist, hostile work environment that Dr. Kassan created and which Anthem and Dr. Langer perpetuated by virtue of their failure to take remedial action.

40. Upon information and belief, the New York Group consisted of more females than males, yet a male, Dr. Ravi Chhabra, who was hired after Dr. Zoltan, was promoted to a manager position above all the women with longer tenure and experience in the same group.

41. Prior to 2022, Dr. Zoltan never received any corrective personnel action, nor did she receive any reprimand or complaint about the hours she performed work for Anthem.

42. On or about December 3, 2021, Dr. Zoltan verbally reported Dr. Kassan's abusive treatment and the hostile work environment to Dr. Langer, per Anthem policy.

43. Dr. Langer asked numerous inappropriate questions during the conversation on or about December 3, 2021, including asking how many children Dr. Zoltan has, whether she has a good nanny, and whether she "ever sees her children" with all the work that she does.

44. Dr. Zoltan replied that her children were irrelevant to the conversation.

45. Dr. Langer advised that she would speak to Dr. Kassan and would communicate with Dr. Zoltan at a later date.

46. The following week, Dr. Zoltan followed up with Dr. Langer via email and provided additional details of Dr. Kassan's disrespectful and harrassing text messages.

6

47. Dr. Langer responded that she would set up a meeting with Dr. Kassan, and that while his texts appeared "rough around the edges," she didn't think Human Resources needed to be contacted.

48. On or about January 4, 2022, Dr. Langer met with Dr. Zoltan and Dr. Kassan. Instead of discussing the harassing, demeaning behavior by Dr. Kassan of which Dr. Zoltan had complained, both managers demanded that Dr. Zoltan work 40 hours per week, Monday through Friday, or search for a new position at Anthem.

49. At the meeting, Dr. Zoltan asked, "Why the change, other than my complaint?" Dr. Langer coldly answered, "Business needs have changed."

50. Dr. Zoltan reiterated to Dr. Langer that she was unable to work a 40-hour per week schedule given her private practice, but that she consistently completed all assigned work.

51. Following the meeting, Dr. Zoltan promptly contacted human resources to report the gender discrimination and retaliation.

52. Dr. Zoltan later learned that Dr. Kassan took a leave of absence of approximately one month, but was not told of any corrective action taken against him.

53. Upon information and belief, upon Dr. Kassan's return from leave of absence, his job responsibilities were divided and Dr. Chhabra received a promotion which included managing part of Dr. Kassan's prior responsibilities for the New York Group.

54. On or about January 4, 2022 and February 11, 2022, Dr. Langer issued Dr. Zoltan two written warnings, just one month and two months, respectively, after she made a complaint of gender discrimination.

55. The written warning letter dated February 11, 2022 directed Dr. Zoltan to accept a 50% pay cut and work a set 20-hour per week schedule or to increase her time to 40 hours per week to avoid a pay cut, neither of which had been required previously. Dr. Langer acknowledged in the letter that Dr. Zoltan is "capable and an asset to our team."

56. Dr. Zoltan replied via email on February 15, 2022 that the schedule change and pay cut were unacceptable, that Anthem had "allowed and perpetuated a hostile working environment for women," and that the corrective action was retaliatory.

57. Anthem terminated Dr. Zoltan's employment on February 16, 2021.

58. Anthem terminated Dr. Zoltan's employment less than one month before she was due to receive her earned bonus and stock award in retaliation for her complaint of gender discrimination.

59. As a result of Anthem's discriminatory and retaliatory actions, Dr. Zoltan has suffered a loss of the salary and the benefits that would have been afforded her, but for the discrimination and retaliation.

60. During the weeks and months following Dr. Kassan's verbal abuse, Dr. Zoltan began suffering from anxiety, depression, difficulty sleeping and tearfulness.

61. Dr. Kassan's harassment of Dr. Zoltan and creation of a hostile work environment for her and other women he supervised constituted gender discrimination in violation of Title VII, the NYSHRL, and the NYCHRL.

62. Dr. Langer's inappropriate questioning of Dr. Zoltan about her caregiver responsibilities and failure to take appropriate corrective action in response to Dr. Zoltan's gender discrimination complaints constituted gender discrimination in violation of Title VII, the NYSHRL, and the NYCHRL.

63. Defendants' actions in mandating that Dr. Zoltan accept a schedule change and increase in hours or, in the alternative, that she accept a 50% pay cut, immediately following her complaint of gender discrimination, constituted unlawful retaliation in violation of Title VII, the NYSHRL, and the NYCHRL.

64. Defendants' actions in subjecting Dr. Zoltan to disciplinary actions, including two written warnings, and in terminating her employment less than 30 days before she was due to receive her annual bonus and stock awards constituted unlawful retaliation for making a complaint of gender discrimination in violation of Title VII, the NYSHRL, and the NYCHRL.

65. The individual defendant, Dr. Kassan, personally participated in the discriminatory conduct and held a supervisory position with the power over plaintiff to do more than carry out personnel decisions made by others.

66. The individual defendant, Dr. Langer, personally participated in the discriminatory conduct and held a supervisory position with the power over plaintiff to do more than carry out personnel decisions made by others.

67. As a result of the foregoing, plaintiff has suffered, and continues to suffer, loss of income, extreme emotional distress, and damage to her reputation and career.

**FIRST CLAIM FOR RELIEF AGAINST ANTHEM
FOR GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

68. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

69. Dr. Kassan harassed and communicated in an insulting, disrespectful fashion with Dr. Zoltan and more than one other female employee, but treated male employees respectfully.

70. Anthem promoted a male doctor with less experience than plaintiff and the other female doctors in the New York Group.

71. Anthem failed to take corrective action to address plaintiff's complaint of gender discrimination, harassment, and creation of a hostile work environment for women by Dr. Kassan.

72. As a result of Anthem's willful, knowing and intentional gender discrimination in violation of Title VII, plaintiff sustained substantial losses in earnings and other employment benefits, future pecuniary losses and has suffered and continues to suffer humiliation, mental and physical distress and anguish.

### SECOND CLAIM FOR RELIEF AGAINST ANTHEM
### FOR RETALIATION IN VIOLATION OF TITLE VII

73. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

74. Dr. Langer required Dr. Zoltan to work a 40-hour work week or accept a 50% pay cut, subjected Dr. Zoltan to disciplinary action, and terminated Dr. Zoltan's employment less than one month before she was to received annual bonus and stock awards, all in retaliation for her gender discrimination complaint.

75. By reason of the foregoing, Anthem retaliated against plaintiff by disciplining her and terminating her as a result of her complaints of gender discrimination, harassment and creation of a hostile work environment.

76. As a result of Anthem's willful, knowing, and intentional retaliation, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### FOR GENDER DISCRIMINATION
### UNDER THE NYSHRL

77. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

78. By reason of the foregoing, Anthem, Dr. Langer, and Dr. Kassan discriminated against plaintiff on account of her gender by creating a hostile work environment based on gender and in failing to take corrective action in violation of the NYSHRL.

79. Anthem promoted a male doctor with less experience than plaintiff and the other female doctors in the New York Group.

80. As a result of defendants' willful, knowing, and intentional discrimination, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

### FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### FOR RETALIATION UNDER THE NYSHRL

81. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

82. By reason of the foregoing, defendants retaliated against plaintiff after she complained of gender discrimination by requiring Dr. Zoltan to work a 40-hour work week or accept a 50% pay cut, subjecting Dr. Zoltan to two written warnings, and terminating Dr. Zoltan's employment less than one month before she was to receive annual bonus and stock awards.

83. As a result of defendants' willful, knowing, and intentional discrimination, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

### FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### FOR GENDER DISCRIMINATION IN VIOLATION OF THE NYCHRL

84. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

85. By reason of the foregoing, defendants discriminated against plaintiff on account of her gender by creating a hostile work environment based on gender and by failing to take corrective action, in violation of the NYCHRL § 8-107.

86. Anthem promoted a male doctor with less experience than plaintiff and the other female doctors in the New York Group.

87. The individual defendants participated in the discrimination; had the power to make personnel decisions; and aided and abetted the discrimination in violation of NYCHRL § 8-107 et seq.

88. As a result of defendants' willful, knowing, and intentional discrimination, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

### SIXTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### FOR RETALATION UNDER THE NYCHRL

89. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

90. By reason of the foregoing, defendants retaliated against plaintiff after she complained of gender discrimination by requiring Dr. Zoltan to work a 40-hour work week or accept a 50% pay cut, subjecting Dr. Zoltan to two written warnings, and terminating Dr. Zoltan's employment less than one month before she was to receive annual bonus and stock awards in violation of the NYCHRL§ 8-107.

91. The individual defendants participated in the discrimination; had the power to make personnel decisions; and aided and abetted the discrimination in violation of NYCHRL § 8-107 et seq.

92. As a result of defendants' willful, knowing, and intentional discrimination, plaintiff sustained substantial losses in earnings, future pecuniary losses and benefits, and has suffered and continues to suffer humiliation, mental and physical distress, and anguish.

### SEVENTH CLAIM FOR RELIEF AGAINST ANTHEM FOR BREACH OF CONTRACT

93. Plaintiff repeats and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

94. Anthem terminated Dr. Zoltan to avoid its contractual obligation to pay stock options pursuant to the Stock Award vesting schedule.

95. By reason of the foregoing, Anthem failed to allow plaintiff to exercise earned stock options under the company's 2020 and 2021 Stock Incentive Plans in violation of plan documents.

96. As a result of the Anthem defendant's willful, knowing, and intentional breach of contract, plaintiff sustained substantial losses in earnings and future pecuniary losses and interest.

**WHEREFORE**, plaintiff respectfully requests that the Court enter judgment in plaintiff's favor and against defendants, containing the following relief:

A. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

C. An award of damages for any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial, plus prejudgment interest;

D. An award of punitive damages;

E. An award of costs that plaintiff has incurred in this action, as well as plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

F. Such other and further relief as the Court may deem just and proper.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY
ON ALL CLAIMS FOR RELIEF**

Dated: New York, New York
February 14, 2023

           BOOK LAW LLP

           By: _____
               Chaim B. Book
               4 Times Square, 19th Floor
               New York, NY 10001
               Telephone: (212) 244-0344
               cbook@booklawllp.com
               *Attorneys for Plaintiff*